Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued May 8, 2003          Decided June 3, 2003

No. 02-5173

TRUCKERS UNITED FOR SAFETY, *ET AL.*,
APPELLEES

v.

KENNETH M. MEAD, THE INSPECTOR GENERAL,
DEPARTMENT OF TRANSPORTATION,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 98cv02793)

---

*R. Craig Lawrence*, Assistant United States Attorney, argued the cause for the appellant. *Roscoe C. Howard, Jr.*, United States Attorney, and *Michael C. Johnson*, Assistant United States Attorney, were on brief.

*Anthony J. McMahon* argued the cause for the appellees.

---

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: HENDERSON, RANDOLPH and GARLAND, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The Inspector General (IG) of the United States Department of Transportation (DOT) seeks reversal of the district court's March 26, 2002 order awarding Truckers United for Safety and other individually named trucking companies (collectively, TUFS) enhanced attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d). Concluding that "specialized expertise in the safety aspects of the trucking industry" constituted a "special factor" that warranted an award of attorney's fees in excess of EAJA's statutory cap, the district court awarded attorney's fees to TUFS's lead counsel at the enhanced rate of $260 per hour. *Truckers United for Safety v. Mead*, 201 F. Supp. 2d 52, 59 (D.D.C. 2002). On appeal, the IG argues that the district court erred in awarding a fee enhancement because TUFS failed to establish that its lawyer possessed "some distinctive knowledge or specialized skill needful for the litigation in question." *Pierce v. Underwood*, 487 U.S. 552, 572 (1988). We agree and therefore reverse.

## I.

On November 17, 1998, TUFS filed suit in the district court alleging that the IG lacked the legal authority to conduct investigations of motor carrier compliance in conjunction with the Office of Motor Carriers (OMC).[1] TUFS asserted that the IG was not authorized to engage in DOT operations—specifically, criminal investigations of standard compliance

---

[1] "In keeping with its mission to enforce motor carrier safety regulations, the [OMC] initiated compliance review investigations into [the] record keeping practices [of the appellees]." *Truckers United for Safety v. Mead*, 251 F.3d 183, 185 (D.C. Cir. 2001). As part of that effort, the OMC used the IG's "purported search and seizure authority" to raid the premises of some of TUFS's members. *Id.* The raids, which took place in October 1998, resulted in the seizure of the appellees' business records. *Id.* at 188.

with federal motor carrier safety regulations—and sought declaratory relief and a preliminary injunction directing the IG to cease his compliance review investigations and to return any property seized in the course of such investigations. The IG moved for summary judgment, asserting that his office had acted within its authority.

The district court granted the IG's motion. *Truckers United for Safety v. Mead*, 86 F. Supp. 2d 1 (D.D.C. 2000).[2] Although it found that the Inspector General Act did not authorize the IG to conduct investigations into motor carrier compliance, *id*. at 9–18, it concluded that the Motor Carrier Safety Improvement Act of 1999 (MCSIA), Pub. L. No. 106–159, 113 Stat. 1748, 1773 (1999), enacted *pendente lite*, gave him the authority to do so, *Truckers United*, 86 F. Supp. 2d at 18–19.

Vacating the district court's decision on appeal, we held that the MCSIA did not retroactively authorize investigations that were *ultra vires* when conducted. *Truckers United for Safety v. Mead*, 251 F.3d 183, 190–92 (D.C. Cir. 2001).[3] Shortly thereafter, on July 5, 2001, TUFS filed a petition for attorney's fees and costs under EAJA with the district court.[4]

---

[2] The district court also granted the IG's motion to dismiss, holding that TUFS lacked organizational standing to pursue claims on behalf of its members. *Truckers United*, 86 F. Supp. 2d at 4–5, 19 n.8. We reversed the district court, however, holding that, while TUFS asserted no basis for organizational standing, it did possess representational standing. *Truckers United*, 251 F.3d at 188–89.

[3] We upheld the district court's construction of the Inspector General Act, however, concluding that the IG acted outside the scope of his authority by "involv[ing] himself in a routine agency investigation that was designed to determine whether individual trucking companies were complying with federal motor carrier safety regulations." *Truckers United*, 251 F.3d at 189.

[4] EAJA provides that a court is to award "fees and other expenses" to a party that has prevailed in a civil action against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

Although EAJA generally limits the recovery of attorney's fees to a rate of $125 per hour, 28 U.S.C. § 2412(d)(2)(A)(ii), TUFS asked the district court to award its lead counsel an enhanced hourly fee of $260 due to "the limited availability of qualified attorneys for the proceedings involved," Petition of Plaintiffs for Fees and Expenses Under the Equal Access to Justice Act at 10. The IG opposed the petition on the grounds that his actions were "substantially justified" and that TUFS's lawyer did not qualify for a fee enhancement under EAJA.

In an order filed March 26, 2002, the district court awarded TUFS $115,682.24 in costs, fees and expenses. *Truckers United*, 201 F. Supp. 2d at 59. After concluding that the IG was not "substantially justified" in conducting the compliance investigations, *id.* at 55–57, the district court discussed TUFS's request for a fee enhancement, *id.* at 57–59. Although it observed that TUFS's counsel "did gain much of his knowledge through his experience as Chief Counsel for the [Federal Highway Administration (FHWA)]" and that "this experience and the knowledge acquired could have been acquired by any member of the bar through competent research," the district court concluded that "he also gained specialized expertise in the safety aspects of the trucking industry and how this interplayed with the regulatory scheme." *Id.* at 59. Finding that expertise "to be a special factor which warrants an award of [attorney's] fees in excess[ ] of the statutory cap," the district court awarded attorney's fees at the requested rate of $260 per hour. *Id.* This appeal followed.[5]

---

[5] In our September 11, 2002 order denying TUFS's motion for summary affirmance, we directed the parties to address in their briefs whether an award of any attorney's fees would be appropriate under EAJA and, if so, at what rate those attorney's fees should be calculated. Nevertheless, the IG declined to challenge the district court's conclusion that his position in the underlying litigation was not "substantially justified." 28 U.S.C. § 2412(d)(1)(A). As a result, the only question before us is whether the district court erred in awarding an enhanced fee.

## II.

We review an EAJA fee award for abuse of discretion and "will reverse the district court if its decision rests on clearly erroneous factual findings or if it leaves us with a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *F.J. Vollmer Co. v. Magaw*, 102 F.3d 591, 596 (D.C. Cir. 1996) (internal quotations omitted). However, if the propriety of a fee award turns "on conclusions of law, such as an interpretation of the statutory terms that define eligibility for an award," our review is *de novo*. *Nat'l Ass'n of Mfrs. v. Dep't of Labor*, 159 F.3d 597, 599 (D.C. Cir. 1998). Because TUFS has failed to establish that its counsel possessed "some distinctive knowledge or specialized skill needful for the litigation in question," *Pierce*, 487 U.S. at 572, we conclude that the district court abused its discretion in awarding the enhanced fee.

EAJA provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that . . . a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). Here, the IG contends that the district court erred in concluding that "specialized expertise in the safety aspects of the trucking industry" constituted a "special factor" that warranted a fee enhancement under EAJA. *Truckers United*, 201 F. Supp. 2d at 59. The IG's argument is, in our view, well-founded.

In *Pierce v. Underwood*, the United States Supreme Court explained that EAJA's "limited availability" exception "must refer to attorneys 'qualified for the proceedings' in some specialized sense, rather than just in their general legal competence." *Pierce*, 487 U.S. at 572. Construing the provision narrowly, the Court held that a lawyer must possess "some distinctive knowledge or specialized skill needful for the litigation" in order to recover attorney's fees in excess of the statutory cap; "an extraordinary level of the general lawyerly knowledge and ability useful in all litigation" does not suffice. *Id.* "[D]istinctive knowledge or specialized skill"

can include, the Court observed, "an identifiable practice specialty such as patent law, or knowledge of foreign law or language." *Id.* Fee awards exceeding the statutory cap are therefore permitted, the Court ruled, only "[w]here such qualifications are necessary and can be obtained only at rates in excess of the [\$125] cap." *Id.* It emphasized that "the other 'special factors' envisioned by the exception must be such as are not of broad and general application." *Id.* at 573.

We have similarly declined to construe EAJA's fee enhancement provision in a liberal fashion. *See F.J. Vollmer*, 102 F.3d at 598–99; *see also In re Sealed Case 00–5116*, 254 F.3d 233 (D.C. Cir. 2001). In *F.J. Vollmer*, for example, we held that a lawyer's "specialization in firearms law" did not constitute a "special factor" warranting a fee enhancement. *F.J. Vollmer*, 102 F.3d at 598–99; *see also Waterman Steamship Corp. v. Maritime Subsidy Bd.*, 901 F.2d 1119, 1124 (D.C. Cir. 1990) (fee enhancement under EAJA available only for lawyers whose specialty "requir[es] technical or other education *outside* the field of American law") (emphasis in original). Although we acknowledged that "lawyers practicing administrative law typically develop expertise in a particular regulated industry, whether energy, communications, railroads, or firearms," we also observed that "they usually gain this expertise from experience, not from the specialized training justifying fee enhancement." *F.J. Vollmer*, 102 F.3d at 598; *see also In re Sealed Case*, 254 F.3d at 236 ("Although federal election law involves a complex statutory and regulatory framework, the field is not beyond the grasp of a competent practicing attorney with access to a law library and the other accoutrements of modern legal practice.") (internal quotations omitted). Therefore, stressing that nothing in EAJA or its legislative history indicates that the Congress intended to entitle "all lawyers practicing administrative law in technical fields" to a fee enhancement, we refused to recognize "expertise acquired through practice" as a special factor warranting an enhanced fee.[6] *F.J. Vollmer*, 102 F.3d at 598–99.

---

[6] We have previously recognized that "[a] number of our sister circuits have adopted a similar approach, refusing to award higher

The IG argues that both *Pierce* and *F.J. Vollmer* require a reversal of TUFS's fee award because the district court awarded a fee enhancement based upon the specialized skill and knowledge TUFS's lawyer acquired through his experience as FHWA Chief Counsel. If the district court's decision had turned solely on the lawyer's expertise in federal highway law, the IG would undoubtedly be correct. *See, e.g.*, *F.J. Vollmer*, 102 F.3d at 598–99. Indeed, even TUFS acknowledges that its lawyer's legal expertise—in and of itself— would not justify a fee enhancement. *See* Br. for Appellees at 3 ("Appellee McMahon agrees with the IG that such expertise would not be a special factor as the term is used in the EAJA."). Expertise in federal highway law, however, was not the precise basis of the district court's ruling. Although it recognized that TUFS's lawyer gained much of his expertise through his experience as FHWA Chief Counsel, the district court found that "he also gained specialized expertise in the safety aspects of the trucking industry and how this interplayed with the regulatory scheme." *Truckers United*, 201 F. Supp. 2d at 59. It is this "specialized expertise" that the district court held to be a special factor warranting an award of attorney's fees in excess of EAJA's statutory cap. *Id.*

We need not decide, however, whether "specialized expertise in the safety aspects of the trucking industry" amounts to a "special factor" under *Pierce* and *F.J. Vollmer*. *Id.* In our view, the plain flaw in the district court's decision is that expertise in the "safety aspects of the trucking industry" was not "needful for the litigation in question." *Pierce*, 487 U.S. at 572; *see also Hyatt v. Barnhart*, 315 F.3d 239, 252–53 (4th Cir. 2002) ("no satisfactory showing" that expertise in class action litigation and social security disability law was "neces-

---

fees based on counsel's expertise in a particular subject." *In re Sealed Case*, 254 F.3d at 236 (collecting cases); *see, e.g.*, *Estate of Cervin v. Commissioner*, 200 F.3d 351 (5th Cir. 2000) (expertise in tax law, combined with expertise in Texas community property and insurance laws, not special factor); *Raines v. Shalala*, 44 F.3d 1355 (7th Cir. 1995) (expertise in social security law not special factor). *But see Love v. Reilly*, 924 F.2d 1492 (9th Cir. 1991) (expertise in environmental litigation constitutes special factor).

sary" to handle dispute regarding interpretation of settlement agreement).

Although TUFS argues that "[a]n understanding of why [the] Congress and the Secretary of Transportation would not assign authority to administer regulations intended to combat fatigue to criminal investigators, rather than trained safety specialists, is greatly facilitated by an appreciation of the complex factors involved in fatigue," Br. for Appellees at 5, neither the district court's order nor our earlier opinion mentions "the complex factors involved in fatigue" in its analysis, *see Truckers United*, 251 F.3d at 189–92; *Truckers United*, 86 F. Supp. 2d at 9–19. Given the statutory question at issue—whether the IG had the legal authority to conduct certain investigations—it is hardly surprising that "the complex factors involved in fatigue" failed to influence either court's decision. *See Truckers United*, 251 F.3d at 189 ("The principal issue in this case is whether the IG had authority in 1998 to investigate motor carriers' compliance with safety regulations."); *Truckers United*, 86 F. Supp. 2d at 9 ("The issue in this case is whether [the Inspector General Act] provide[s] the [IG] with authority to conduct investigations of motor carrier compliance with the [Motor Carrier Safety Act and its implementing regulations]."). TUFS's failure to mention safety issues generally—or driver fatigue issues specifically—in its complaint indicates that the omission was not the result of judicial oversight. *See* Amended Complaint for Declaratory Judgment and Preliminary and Permanent Injunction at 4 (identifying common issues of law and fact as "the authority of the IG to investigate regulatory compliance by the [c]lass members, the manner in which these investigations are conducted, the irreparable harm suffered or potential, and the lack of adequate remedies at law"); *id.* at 13 (praying for, *inter alia*, order holding underlying investigations are beyond IG's authority). We therefore conclude that "specialized expertise in the safety aspects of the trucking industry" is neither "needful" nor "critical," *Pierce*, 487 U.S. at 572; *Truckers United*, 201 F. Supp. 2d at 59, but rather—at best—tangential to the underlying litigation.

## III.

For the foregoing reasons, we conclude that the district court abused its discretion in awarding TUFS attorney's fees in excess of EAJA's statutory cap. We therefore reverse the judgment of the district court and remand for a recalculation of fees and costs in accordance with 28 U.S.C. § 2412(d)(2)(A)(ii).

*So ordered.*